UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

CHRISTA KATSENES,

    Plaintiff,

v.   Civil Action No. 1:19-CV-12112-DJC

U.S. BANK TRUST, N.A., AS TRUSTEE FOR
LSF9 MASTER PARTICIPATION TRUST,

    Defendant.
_____

## DEFENDANT'S OPPOSITION PLAINTIFF'S MOTION TO AMEND VERIFIED COMPLAINT

**I.  INTRODUCTION**

Defendant U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust ("U.S. Bank" or the "Defendant") hereby submits its opposition to Plaintiff Christa Katsenes' Motion to Amend Verified Complaint (the "Motion to Amend"). The new claims in the proposed First Amended Complaint (the "Proposed Complaint") include: Count III - Intentional Infliction of Emotional Distress; Count IV – Abuse of Process; Count V – Slander of Title; and Count VI – Civil Conspiracy; Count VII – Violation of Massachusetts Civil Rights Act M.G.L. ch. 12, Section 11 I.

The Defendant opposes such an attempt to amend the operative complaint in this action as to Counts III, IV, V, VI, and VII of the Proposed Complaint because such amendment would be futile, as these new claims in the Proposed Complaint fail as a matter of law.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case concerns a mortgage taken out by Mrs. Katsenes' now-deceased husband in 2005 (the "2005 Mortgage"), allegedly without the knowledge of Mrs. Katsenes. To the extent any proceeds of the 2005 Mortgage were used to pay off joint obligations of Mr. *and Mrs. Katsenes*, U.S. Bank is asserting a claim to be equitably subrogated into the shoes of those mortgagees, so as to prevent the Plaintiff from being unjustly enriched by the discharge of her indebtedness. The Proposed Complaint rests on the flawed premises that (1) filing a routine pleading to establish the Plaintiff's interest in 25 Pleasant Street, Dover, Massachusetts (the "Property") was illegal, (2) that asserting a viable counterclaim for equitable subrogation is somehow unlawful, and (3) that an insured defendant is not entitled to remedies at equity, which may ultimately lessen any liability of its insurer.

## III. LEGAL STANDARD

It is well-settled that a party does not have an automatic right to amend a pleading, aside from certain relatively narrow circumstances. See, e.g. The Hilsinger Co. v. Kleen Concepts, LLC, 164 F. Supp. 3d 195, 198 (D. Mass. 2016). "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). In determining whether to grant a motion to amend, the Court must examine the totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations." The Hilsinger Co. v.

Kleen Concepts, LLC, 164 F. Supp. 3d 195, 198 (D. Mass. 2016) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30–31 (1st Cir.2006)). The Hilsinger Court explained denial on the basis of futility as follows:

> "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir.1996). "In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Id. On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give ... plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir.2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir.1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S.Ct. 1955 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). **Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief**." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir.2008) (alterations omitted) (internal quotation marks omitted).

The Hilsinger Co. v. Kleen Concepts, LLC, 164 F. Supp. 3d 195, 199 (D. Mass. 2016) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Notwithstanding that the Motion to Amend, the Memorandum in Support of the Motion to Amend Verified Complaint, and the Proposed Complaint are self-contradictory and make wholly unsupported factual allegations and erroneous conclusions of law, even under the most deferential standard, the new counts contained within the Proposed Complaint are each legally deficient on the face of the Proposed Complaint. As described fully below, the Counts III, IV, V,

3

VI, and VII in the Proposed Complaint each fail as a matter of law, and therefore the Motion to Amend Should be denied as to those counts.[1]

## IV. ARGUMENT

**A. Count III of the Proposed Complaint - Intentional Infliction of Emotional Distress – fails as a matter of law because the Defendant's conduct was not "extreme or outrageous."**

Paragraph 48 of the Proposed Complaint alleges:

> 48. The bank's actions in threatening the then 78 year old plaintiff, who had lost her husband less than 6 months previously, with the loss of her home by initiating foreclosure of a mortgage which the bank knew had been previously extinguished, and by publishing notice of the same for 3 consecutive weeks in the local newspaper, and by recording notice of the same with the Norfolk County Registry of Deeds, is extreme, outrageous, beyond all possible bounds of decency and is utterly intolerable in a civilized community.

The elements of a claim for intentional infliction of emotional distress ("IIED") are that "(1) that [defendant] intended, knew, or should have known that his conduct would cause emotional distress; **(2) that the conduct was extreme and outrageous**; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 371 (D. Mass. 2015) (quoting Polay v. McMahon, 468 Mass. 379, (2014)) (emphasis added).

Plaintiff's claim fails as a matter of law because the conduct described in the Proposed Complaint was neither extreme nor outrageous.[2] Conduct is "extreme and outrageous" only if it

---

[1] The Memorandum in Support of Motion to Amend Verified Complaint cites to certain cases concerning an insurance company's ability to be subrogated into the shoes of its insured. As that is not an issue in this case, those allegations and conclusions of law are wholly irrelevant and need not be addressed.

[2] As described fully in subsection E, the conduct also does not amount to "threatening' as a matter of law.

4

is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 617 (D. Mass. 2016) (citing Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, comment d)).

Liability cannot be predicated on "'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (quoting Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987), quoting Restatement (Second) of Torts § 46 comment d (1965)). See also Beecy v. Pucciarelli, 387 Mass. 589, 596 (1982) (claim alleging intentional infliction of emotional distress properly dismissed where defendant's conduct cannot be characterized as extreme and outrageous); Richey v. American Automobile Ass'n, 380 Mass. 835, 839 (1980) (even if trier of fact inferred that plaintiff's supervisor made a bad, unjust, and unkind decision to fire employee who was "tightly strung," plaintiff still failed to make out a plausible case of "outrage").

Compare the facts of this case with those of Simon v. Solomon, 385 Mass. 91, 95, 97, (1982) (persistent failure by landlord to relieve flooding problem which resulted in water and sewage entering tenant's apartment); Boyle v. Wenk, 378 Mass. 592, (1979) (persistent misconduct by private investigator who called the plaintiff repeatedly in the early morning asking her questions, and had also claimed to have been in prison for rape in the plaintiff's presence as well as falsely identifying himself as a police officer ); Agis v. Howard Johnson Co.,

5

371 Mass. 140, 144–145 (public humiliation where an employer suspected stealing and announced he would be firing all waitresses in alphabetical order, and fired the plaintiff, a waitress, because her name last name started with the letter "A"). In order to survive a motion to dismiss on an IIED claim the conduct alleged must be "**targeted, deliberate, and malicious**." Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 617 (D. Mass. 2016) (emphasis added) (holding that defendant's investigation into the plaintiff's alleged sexual misconduct and "effectively labeling him as a sexual predator" was not extreme or outrageous conduct.).

      Here, the action complained of is that the Defendant initiated a precursor to a foreclosure proceeding against the Plaintiff, who was not a signatory to the 2005 Mortgage, but whose debt had been discharged by the 2005 Mortgage, thus making her liable to the amount that *her debt* was paid off under the doctrine of equitable subrogation. See, e.g. Wells Fargo Bank, N.A. v. Comeau 92 Mass.App.Ct. 462 (2017). Even setting aside U.S. Bank's viable equitable subrogation claim, a reading and comparison of relevant case law makes clear that the initiation of foreclosure of a mortgage over a property which the Plaintiff had an interest in, although she was not a signatory on the 2005 Mortgage, cannot as a matter of law amount to such "extreme and outrageous" conduct that was "targeted, deliberate, and malicious." The action which was described as "initiating foreclosure" and publishing notice as alleged in Paragraph 48 of the Proposed Complaint was the Defendant's filing of a Complaint to Determine Military Status. Although it may have been a precursor to a foreclosure, the filing of such a complaint is not the actual exercise of the right to foreclose under a power of sale under M.G.L. c. 244, § 14. Moreover, the Defendant was *legally required* to publish the order of notice of the complaint. The Defendant was taking legally-required, routine steps prior to foreclosure, which sought to do nothing but comply with Massachusetts law and determine the Plaintiff's military status and

6

whether she could claim the benefits of the Servicemembers Civil Relief Act. Compare Vittands v. Sudduth, 49 Mass. App. Ct. 401 (2000) (holding that a trier of fact could conclude that, "after persisting over many years in various efforts to prevent [the counterclaim-plaintiff] from building on her property, the neighbors filed their complaint as a last-ditch effort to maintain their 'private park' by entangling the property in additional and arguably meritless litigation on the eve of its sale" was extreme and outrageous). No reasonable person could therefore conclude that the Defendant's legally-required actions – which are themselves designed to give those with an interest in the property to be foreclosed ample opportunity to avail themselves of any remedy at their disposal to avoid foreclosure – rise to the level of conduct that Massachusetts courts require in order for a plaintiff to survive a motion to dismiss. Because this claim fails as a matter of law on the face of the Proposed Complaint such that it is susceptible to a motion to dismiss for failure to state a claim, allowing the Proposed Complaint would be futile.

**B.     Count IV of the Proposed Complaint – Abuse of Process – fails as a matter of law because the Plaintiff's allegations cannot establish an ulterior or illegitimate purpose.**

The elements of an abuse of process claim are that: "'(1) "process" was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.' Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 772 N.E.2d 552, 563 (2002). The 'crux of an abuse of process claim' is a showing of an 'illegitimate motive,' making this cause of action turn on intent. Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 925 N.E.2d 513, 526 (2010)." Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 371 (D. Mass. 2015). To prevail on a cause of action for abuse of process "it must appear that the process was used to accomplish some ulterior purpose *for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed*." Quaranto v. Silverman, 345 Mass. 423, 426 (1963) (quoting Gabriel v. Borowy, 324 Mass. 231, 236 (1949)). "Mere commencement of litigation to enforce a

7

claim which the person commencing the litigation knows or reasonably should have known to be groundless without proof of any ulterior purpose" does not constitute abuse of process. See Beecy v. Pucciarelli, 387 Mass. 589, 595–96, 441 N.E.2d 1035, 1039–40 (1982).

The Plaintiff attempts to get around this with circular logic – that the Defendant's ulterior motive was exactly what the foreclosure would accomplish. The "ulterior motive" alleged by the Plaintiff is that the Defendant "brought the action maliciously for the ulterior illegal purpose of service of process to pressure and intimidate Christa to secure from Christa the payment of funds to the U.S. Bank for money which they knew she did not owe." Proposed Complaint at ¶ 53. The facts giving rise to Plaintiff's "ulterior motive" and the allegation that it "knew or should have known" that the 2005 Mortgage was extinguished are *identical*.[3] Massachusetts law does not allow the Plaintiff to bootstrap herself into an abuse of process claim by alleging the Defendant filed a proceeding in order to establish the Plaintiff's rights as a precursor to a foreclosure proceeding in order to do exactly what that process was designed to do – establish the Plaintiff's rights as precursor to a foreclosure proceeding.

**C.  Count V of the Proposed Complaint – Slander of Title – fails because the statements are afforded absolute privilege under the law and the Plaintiff fails to allege adequate pecuniary harm.**

Judicial proceedings, such as the filing of a Complaint to Determine Military Status (Proposed Complaint at ¶ 56), the Order of Notice issued by the Land Court (Proposed Complaint at ¶ 59) and the legally-required publication of the Order of Notice (Proposed Complaint at ¶ 61), are afforded absolute privilege and therefore Count V of the Proposed Complaint must fail as a matter of law. Publication of each of the aforementioned documents cannot amount to slander of title because each of the documents benefits from the absolute

---

[3] The Defendant denies the allegation that the 2005 Mortgage was extinguished, but is adopting the position of the Proposed Complaint for the purpose of this pleading.

privilege afforded judicial proceedings. See Powell v. Stevens, 69 Mass. App. Ct. 87, 89 (2007). In that case, the plaintiff alleged that the recording of the notice of a memorandum of *lis pendens* constituted slander of title. The Appeals Court of Massachusetts upheld the Superior Court's granting of summary judgment on that issue, noting that the Superior Court conducted a review of the law of numerous jurisdictions, and that:

> …those jurisdictions have extended the absolute privilege accorded statements made in the course of litigation to include the filing of a lis pendens memorandum, provided the underlying action involves allegations affecting some ownership interest in the subject property. ***These courts have adopted or accepted one or more of the following rationales: (1) with few exceptions, any publication made in judicial proceedings enjoys an absolute privilege from subsequent claims of defamation***; (2) the only purpose of recording a notice of lis pendens is to put prospective buyers on constructive notice of the pendency of the litigation; (3) the notice of lis pendens is purely incidental to the action in which it is filed, refers specifically to that action, and has no existence apart from that action; and ***(4) the recording of a notice of lis pendens is in effect a republication of the proceedings in the action and is, therefore, accorded the same absolute privilege as any other publication in that action.***

Id. at 89–90 (emphasis added).

In Powell v. Stevens, the Superior Court described the cause of action for slander of title as:

> …'a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him injury." The action of slander of title is the willful recordation or publication of untrue material that disparages the title of another property. Generally, an action under slander of title may only be maintained by one who possesses an estate or interest in the affected property…The requirements liability for the publication of injurious falsehood are as follows: One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to the interests of the other having pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity. Dulgarian v. Stone, 420 Mass. 843, 852 (1995), *quoting Restatement (Second) of Torts,* § 623A.

Powell v. Stevens, No. CIV.A. 2000-0089, 2004 WL 1047451, at *2–3 (Mass. Super. May 3, 2004) (internal quotations and additional citations omitted). The Superior Court explained that

"it is well settled that statements (oral or written) made by a party or witness in the institution and during the course of judicial proceedings are ***absolutely privileged***. See *Restatement (Second) of Torts* § 587. An absolute privilege provides a ***complete defense*** to a defamation claim even if the offensive statements are uttered maliciously or in bad faith, so long as the challenged remarks are relevant or pertinent to the judicial proceedings." Powell v. Stevens at *6 (emphasis added); see also Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. 359, 361 (1981). "The privilege that attaches to such statements ***protects the maker from any civil liability***." Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. at 140. "It is also well settled that an attorney's statements are privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.' See Sriberg v. Raymond, 370 Mass. 105, 109 (1976); *Restatement (Second) of Torts,* § 586. This doctrine is grounded in the public policy of permitting attorneys complete freedom of expression and candor in communications in behalf of their clients. Sriberg v. Raymond, 370 Mass. at 108-109. *See also Restatement (Second) of Torts,* § 586, Comment a." Powell v. Stevens at *6 (emphasis added). Whether a defense of an absolute privilege applies is a question of law to be decided by the court. Id. at *4.

The Complaint to Determine Military Status (Proposed Complaint at ¶ 56), the Order of Notice issued by the Land Court (Proposed Complaint at ¶ 59) and the legally-required publication of the Order of Notice (Proposed Complaint at ¶ 61), are undeniably statements made in the course of judicial proceedings which are afforded absolute privilege and therefore insufficient to sustain a slander of title claim as a matter of law. Therefore, the only remaining allegation is that "U.S. Bank has refused and continues to refuse to give Christ a discharge of

10

that mortgage without right or justification, thereby further maliciously slandering Christa's title by allowing a mortgage which has been extinguished to remain outstanding on record." Proposed Complaint at ¶ 63. The existence of the 2005 Mortgage, although not a judicial proceeding entitled to absolute privilege, is insufficient to constitute slander of title as a matter of law because Plaintiff has not plead that she has suffered the kind of pecuniary harm necessary for the slander of title claim to survive a motion to dismiss.[4]

The pecuniary harm complained of in the Proposed Complaint are the "legal fees and costs in this action." Proposed Complaint at ¶ 66. The Massachusetts Superior Court has rejected an argument that legal fees alone are the type of pecuniary loss necessary to support a slander of title claim, stating "the traditional purpose of slander of title 'special damages' is to compensate the property owner for (i) loss of sale price, (ii) loss of mortgageability; and (iii) infliction of increased expense and effort in the process of sale or mortgaging" and that "[t]he chief characteristic of special damages is a realized loss." Powell v. Stevens at *3 and *9. The Powell v. Stevens Court noted the plaintiff there was "far from remediless," citing a number of other causes of action available to litigants who seek to recover litigation fees, including abuse of process, malicious prosecution, and the provision of G.L. c. 231, § 6F which allows for the recovery of fees and expenses incurred in defense of frivolous, insubstantial claims advanced in bad faith. Id. Here, Plaintiff has not alleged that she has so much as attempted to sell or mortgage her interest in the Property, and thus has no realized loss sufficient to sustain a slander of title claim on the basis of the Defendant's refusal to discharge the 2005 Mortgage. Because the Defendant's refusal to discharge the 2005 Mortgage is insufficient to maintain a slander of

---

[4] U.S. Bank notes that Plaintiff has failed to plead sufficient pecuniary harm as a matter of law as to *any* of the allegedly slanderous statements in this claim.

11

title claim, and the other documents are afforded absolute protection as they are each part of a judicial proceeding, the Motion to Amend should be denied as to that claim.

**D. Count VI of the Proposed Complaint – Civil Conspiracy – fails as a matter of law because the Defendant is entitled to the benefit of its insurance policy's provision requiring the insurer to pay for the litigation of certain claims on the Defendant's behalf.**

To establish a claim for civil conspiracy, the Plaintiff must allege (1) a combination of two or more persons to accomplish an unlawful purpose, or a purpose not unlawful by unlawful means, and (2) some peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in like relation to the plaintiff would not have had, and (3) damage. Clermont v. Fallon Clinic, Inc., No. CIV.A. 2001-1512 B, 2003 WL 21321190, at *15 (Mass. Super. May 15, 2003). Plaintiff's claim for civil conspiracy rests on the fundamental misunderstanding that a Defendant with insurance is barred from seeking equitable relief, even if doing so would offset the ultimate liability of its insurer. Plaintiff's position appears to be that even if the Defendant is unsuccessful on its counterclaim, it has insurance, and therefore bringing the counterclaim amounted to a civil conspiracy with the insurer.

The Defendant first notes that the Proposed Complaint is internally inconsistent and contradicts the Memorandum in Support of the Motion to Amend Verified Complaint. The Memorandum in Support of the Motion to Amend Verified Complaint (the "Memorandum") states, without any specific support, that "3. After a period of negotiation between U.S. Bank and WFG, *it was agreed that WFG would pay the title insurance claim*. 4. *After WFG agreed to pay the claim*, it agreed to take over the defendant's litigation costs and in fact substituted its own counsel to take the place of U.S. Bank's previous counsel." Memorandum at page 3 (emphasis added). The Civil Conspiracy claim in the Proposed Complaint, however, states "*If* WFG first paid the title insurance claim…" Proposed Complaint at ¶ 69 (emphasis added) and "WFG agreed to honor the claim of U.S. Bank *but not to pay the claim* until first the

within action was brought…" Proposed Complaint at ¶ 70a (emphasis added). For the purposes of this pleading, the Defendant is forced to assume that it is the position of the Plaintiff that WFG National Title Insurance Company ("WFG") did not make any monetary payment directly to the Defendant, its insured, but instead chose to abide by its obligation to defend the Defendant and litigate this lawsuit brought by Plaintiff because it concerns matters that WFG deemed covered by the defense obligation in the operative insurance policy. At its core, Count VI takes issue with the Defendant's assertion of a the counterclaim of equitable subrogation.

Plaintiff alleges that the Defendant's goal was "designed to accomplish the unlawful purpose and/or by unlawful means of extorting from Christa monies to their benefit which they knew she did not owe." Proposed Complaint at ¶ 71. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The civil conspiracy claim can only stand if this Court accepts the Plaintiff's absurd and far-reaching proposition that it is unlawful to pursue an equitable subrogation counterclaim where the mortgage at issue *paid off the Plaintiff's own debts* and seeks to prevent the Plaintiff from being unjustly enriched by the discharge of her indebtedness. See Wells Fargo Bank, N.A. v. Comeau 92 Mass.App.Ct. 462 (2017). That the Plaintiff calls this "unlawful" does not and cannot make it so.

The civil conspiracy claim must also fail because it makes the wholly untenable assertion that it is unlawful for an insurance company to defend its insured, as it is contractually obligated to do pursuant to a defense obligation in an insurance policy. Insureds who have bargained and paid for a defense obligation would be forced into spending their own resources any time an insurance company fears its compliance with the policy to be susceptible to a claim of civil

13

conspiracy solely for abiding by the terms of the insurance policy. To allow this Count to survive and be plead would also force insurance companies into an impossible predicament of choosing between abiding by their legally enforceable obligation to defend and litigate on behalf of their insureds and their own interest in not being haled into court on a baseless conspiracy claim every time they do so.

The Defendant does not argue that it is entirely impossible for an insurance company to conspire with its insured under any circumstances. Rather, what the Plaintiff has alleged – that the Defendant's insurance company is abiding by its defense obligation pursuant to the relevant insurance policy and that the Defendant has asserted a valid counterclaim in equity which may ultimately reduce any liability on the part of the insurance company – cannot be a "conspiracy." U.S. Bank also objects to the characterization that it in any way acted "clandestinely" as the Plaintiff alleges. The Defendant was sued by the Plaintiff, had an insurance policy which obligated its insurance company to defend it against the Plaintiff's claims, and when insurance counsel was retained, they entered their appearances. The Plaintiff's civil conspiracy claim thus necessarily fails as a matter of law, even when accounting for the wide latitude afforded allegations in a complaint. That the Plaintiff does not like that the Defendant is insured and has a viable counterclaim to the counts in her Verified Complaint does not make the Defendant's actions in seeking to revive the *Plaintiff's own debt* unlawful, and is woefully insufficient to give rise to a civil conspiracy.

**E.  Count VII of the Proposed Complaint – Violation of Massachusetts Civil Rights Act M.G.L. ch. 12, Section 11 I – fails as a matter of law because the Defendant's conduct falls far short of the behavior that Massachusetts courts require.**

Count VII alleges that the Defendant violated Massachusetts Civil Rights Act, M.G.L. c. 12, § 11 I (the "MCRA"), when it filed the Complaint to Determine Military Status in the Land

Court. For the purposes of that act, a "threat" consists of "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; "intimidation" involves "putting in fear for the purpose of compelling or deterring conduct"; and "coercion" is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Glovsky v. Roche Bros. Supermarkets, 469 Mass. 752, 17 N.E.3d 1026, 1035 (2014). Once again, this provision covers intentional, not accidental, conduct: these are behaviors undertaken with the purpose of improper persuasion. Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 371 (D. Mass. 2015). The Plaintiff alleges that the Defendant violated this statute when it filed the Complaint to Determine Military Status.

Again, a comparison of what Massachusetts courts consider to be behavior sufficient to warrant recovery under the MCRA is helpful to demonstrate that the filing of the Complaint to Determine Military Status is legally insufficient to rise to such a level. In Maroney as Tr. of Premiere Realty Tr. v. Fiorentini, 405 F. Supp. 3d 282 (D. Mass. 2019), the court held that the plaintiff had sufficiently alleged a violation of the MCRA where he alleged the defendant Mayor of Haverhill told the plaintiff that the City of Haverhill would issue all the permits the plaintiff wanted if he dropped the lawsuit. The MCRA claim in Gaetani v. Hadley, No. 14-30057-MGM, 2016 WL 593496 (D. Mass. Feb. 12, 2016) survived a motion to dismiss where the plaintiff alleged that that he was attacked by Defendants and removed from the courtroom against his will when he sought to clarify a judge's order. See also Haufler v. Zotos, 446 Mass. 489, 506–508, 845 N.E.2d 322 (2006) (pattern of "persistent and antagonistic" conduct satisfied MCRA); Bell v. Mazza, 394 Mass. 176, 180, 183, 474 N.E.2d 1111 (1985) (course of conduct consisting of threats, "intemperate epithets," and physical obstruction satisfied MCRA); Lu v. Hulme, No. CA 12-11117-MLW, 2013 WL 1331028 (D. Mass. Mar. 30, 2013) (plaintiff, who was homeless,

15

sufficiently alleged violation of MCRA where he alleged he was physically stopped from entering a public library with a cart containing his personal belongings and that he understood if he did not comply, a trespassing charge would be brought against him).

Even accepting for the purposes of this pleading that the Plaintiff's unsupported allegations as to the Defendant's intentions and state of mind are true, the act of filing a Complaint to Determine Military Status is legally insufficient to amount to a "threat" or to "coerce" the Plaintiff. As previously discussed in this brief, the Defendant was taking legally-required, routine steps *prior to foreclosure*, which sought to do nothing but comply with the law and determine the Plaintiff's military status and whether she could claim the benefits of the Servicemembers Civil Relief Act. The Complaint to Determine Military Status could not and did not interfere with Plaintiff's exercise or enjoyment of her rights to "possess, enjoy, and protect" her property as the Proposed Complaint alleges. The Defendant's legally-required actions – which are themselves designed to give those with an interest in the property to be foreclosed ample opportunity to avail themselves of any remedy at their disposal to avoid foreclosure – simply do not rise to the level of conduct that Massachusetts courts require in order for a plaintiff to survive a motion to dismiss.

## V. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Amend Verified Complaint should be denied Counts III, IV, V, VI, and VII because such an amendment would be futile in that the new claims sought to be brought against the Defendant Proposed Complaint are without any legal merit and are susceptible to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

16

WHEREFORE Defendant U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust respectfully requests that the Court deny Plaintiff's Motion to Amend Verified Complaint as to Counts III, IV, V, VI, and VII.

**U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST,**

**DEFENDANT**

By its attorneys,

*/s/ Julianna M. Charpentier*
Lawrence P. Heffernan (BBO #228660)
Julianna M. Charpentier (BBO #703286)
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108
(617) 557-5900
Lheffernan@rc.com
jcharpentier@rc.com

December 21, 2020

**CERTIFICATE OF SERVICE**

I, Julianna M. Charpentier, hereby certify that a copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those, if any, indicated as non-registered participants on this 21st day of December, 2020.

*/s/ Julianna M. Charpentier*
Julianna M. Charpentier