|  |  |  |
|---|---|---|
| **CHRISTA KATSENES** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:19-cv-12112-DJC** |
| | ) | |
| **U.S. BANK TRUST, N.A., AS** | ) | |
| **TRUSTEE FOR LSF9 MASTER** | ) | |
| **PARTICIPATION TRUST** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENAS AND/OR ISSUE A PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3), Defendant/ Counterclaim Plaintiff U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust ("U.S. Bank") hereby submits this memorandum of law in support of its Motion to Quash Subpoenas and/or Issue a Protective Order prohibiting the Plaintiff from enforcing four (4) Notices of Taking Depositions and deposition subpoenas served by Plaintiff/ Counterclaim Defendant Christa Katsenes ("Plaintiff") on (1) U.S. Bank's counsel of record, Reneau Longoria ("Longoria") (the "Longoria Deposition Subpoena") (2) WFG National Title Insurance Company, Inc. ("WFG") (the "WFG Deposition Subpoena") and (3) Vylla Title, LLC, f/k/a Carrington Title Services, LLC ("Carrington") (the "Carrington Deposition Subpoena"), and (4) LSF9 Mortgage Holdings LLC (the "LSF9 LLC Deposition Subpoena"). True and accurate copies of the subpoenas are attached hereto as **Exhibit A** (Longoria), **Exhibit B** (WFG), **Exhibit C** (LSF9 LLC), and **Exhibit D** (Carrington). The subpoenas far exceed the scope of discovery,

call for the disclosure of privileged communications, and implicates U.S. Bank's privacy interests.

## I.    RELEVANT FACTUAL BACKGROUND

The sole issue in this case is whether Plaintiff is liable for repayment of mortgage debt, taxes, insurance that were paid on her behalf (plus interest) in connection with a mortgage taken out by Plaintiff's now-deceased husband in 2005 (the "2005 Mortgage"), allegedly without Plaintiff's knowledge.  The 2005 Mortgage was granted to Bank of America, assigned to U.S. Bank in 2016, and is secured by the real property located at 25 Pleasant Street in Dover, Massachusetts (the "Property").  Following the death of her husband in September 2018, Plaintiff became the sole owner of the Property.  Since *2013*, Plaintiff has had the benefit of living on the Property without a single payment for the mortgage, property taxes, or homeowner's insurance.  Moreover, Plaintiff leases out two portions of the Property—a room and an in-law apartment (which she had been renting out prior to her husband's 2018 death)— and was receiving rent payments as of her June 2021 deposition in this case.  To the extent proceeds of the 2005 Mortgage were used to pay off joint obligations of Mr. *and Mrs. Katsenes*, U.S. Bank is asserting a claim to be equitably subrogated into the shoes of those mortgagees to prevent Plaintiff's unjust enrichment and financial windfall.

In February 2019, U.S. Bank, through its counsel, Doonan, Graves & Longoria (the law firm at which Longoria is a partner) filed a Complaint to Determine Plaintiff's Military Status. In September 2019, Plaintiff filed the instant action in the Massachusetts Land Court, which was removed to this Court, seeking an injunction preventing U.S. Bank from foreclosing on the 2005 Mortgage and a declaratory judgment that the 2005 Mortgage was extinguished.  The Plaintiff sought leave to amend her complaint to assert a medley of new claims such as civil conspiracy,

intentional infliction of emotional distress, abuse of process, slander of title, and violation of the Massachusetts Civil Rights Act. *See generally* Plaintiff's Motion to Amend Verified Complaint, Dkt. No. 65. The hodgepodge of new claims in the proposed amended complaint rested on the flawed premises that (1) filing a routine pleading—the Complaint to Determine Plaintiff's Military Status—to establish the Plaintiff's interest in the Property was illegal, (2) asserting a viable counterclaim for equitable subrogation is somehow unlawful, and (3) an insured defendant is not entitled to remedies at equity, which may ultimately lessen any liability of its insurer.

U.S. Bank successfully opposed the motion to amend and on May 31, 2021, the Court (Casper, J.) found that the proposed claims would be futile. *See generally*, Court's Memorandum and Order, Dkt. No. 84. The only count added to the complaint was under G.L. c. 93A, which was not addressed in the opposition for leave to amend. U.S. Bank, however, maintains that the G.L. c. 93A claim is similarly without merit and susceptible to dismissal, particularly in light of the viability of U.S. Bank's equitable subrogation counterclaim and futility of the proposed additional claims. The G.L. c. 93A claim rests on U.S. Bank's filing of a Servicemembers Civil Relief Act complaint and the assertion that such a filing was tantamount to foreclosing the subject mortgage. However, it is well established that "the Land Court [servicemember] action [does] not mark the commencement of foreclosure proceedings." *Akar v. Federal Nat'l Mtge. Ass'n,* 845 F.Supp. 2d 381, 396–97 (D. Mass. 2012). Because "a servicemember proceeding is neither a part of nor necessary to the foreclosure process," Plaintiff's G.L. c. 93A claim rests on a faulty legal premise. *HSBC Bank USA, N.A. v. Matt*, 464 Mass. 193, 197 (2013).[1]

---

[1]     The District of Massachusetts (Stearns, J.) has recently cited *HSBC Bank USA, N.A. v. Matt*, 464 Mass. at 197 for the same proposition. *See The Bank of New York Mellon v. Cambece, et al.*, Case No. 1:21-cv-10186-RGS, Dkt. No. 41.

U.S. Bank has asserted counterclaims for equitable mortgage, equitable subrogation, unjust enrichment, and quantum meruit seeking to establish the validity and enforceability of the 2005 Mortgage and/or to revive the 2005 Mortgage as a first priority lien on the Property up to the amount of Plaintiff's debt that was paid off, plus taxes, insurance, and interest accruing from the date of nonpayment. Despite the Court's decision denying Plaintiff's Motion to Amend nearly in its entirety, Plaintiff has not abandoned any of the flawed premises that underpinned that motion, as evidenced by the latest efforts at discovery.

**The Deposition Subpoenas**

On September 7, 2021, counsel for Plaintiff caused four subpoenas to be served on non-parties Longoria, WFG, Carrington, and the LSF9 LLC (the "Deposition Subpoenas").[2] The topics Plaintiff seeks to inquire about are not new. As mentioned above, Longoria's law firm filed the Servicemembers Civil Relief Act complaint against Plaintiff in February *2019* to determine whether she could claim the benefits of that Act. Plaintiff has known since U.S. Bank's January 13, 2020 Initial Disclosures that U.S. Bank "has made a title insurance policy claim with WFG National Title Insurance Company concerning the claim in this action." U.S. Bank's document production includes a January 7, 2020 letter from WFG to Longoria stating the title insurance policy (the "Policy") was issued by Carrington in 2016 and discusses coverage of U.S. Bank's claim under the Policy. The loan purchase agreement showing that the LSF9 LLC was the purchasing entity in the transaction whereby Bank of America assigned the 2005 Mortgage to U.S. Bank was produced on June 26, 2020.

Plaintiff previously sought and obtained document productions from third parties Doonan, Graves & Longoria, WFG, and Carrington in 2020. The Court allowed this discovery

---

[2] Discovery was stayed while the parties pursued mediation, which was ultimately unsuccessful.

in June 2020 over U.S. Bank's opposition (as to Doonan, Graves & Longoria and Carrington), largely on relevance grounds. *See* Dkt. No. 47. After Plaintiff received these documents, she filed her ill-fated Motion to Amend, which was denied except for the unaddressed c. 93A claim. *See* Dkt. No. 84. To be clear, the factual bases underpinning each of the flawed counts in the proposed amended complaint are the very same facts that the c. 93A count rests upon, and U.S. Bank strongly believes that the c. 93A count will similarly be dismissed on summary judgment.[3] Courts may properly limit discovery to viable claims. *See, e.g.*, *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 597 (1st Cir. 1980) (before compelling discovery, a "court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition."); *see also U.S. ex rel. Duxbury v. Ortho Biotech Prod., L.P.*, 719 F.3d 31, 38-39 (1st Cir. 2013). Nonetheless, Plaintiff apparently not only wants "to conduct a fishing expedition, [she wants] to conduct discovery in order to locate the lake in which to conduct the fishing expedition." *Mills v. State of Me.*, 118 F.3d 37, 51 (1st Cir. 1997).

Now, despite having had the benefit of reviewing the various document productions and clear indication from the Court that Plaintiff's far-fetched c. 93A claim is without any legal merit, it is indisputable that further discovery in the form of depositions from these third parties will be nothing more than a waste of the parties' time and resources because there is no indication that there is *any* information that will lend itself to the resolution of the instant dispute between Plaintiff and U.S. Bank.

---

[3]     Plaintiff's Amended Complaint alleges that U.S. Bank violated c. 93A by filing a complaint against Plaintiff pursuant to the Servicemembers Civil Relief Act and because it "…refused and continues to refuse to give Christa a discharge of [the 2005 Mortgage] in order to clear title to the [Property]." Amended Complaint, ¶¶ 37, 39. These are the same predicate facts underlying the futile Intentional Infliction of Emotional Distress, Abuse of Process, Slander of Title, and Violation of Massachusetts Civil Rights Act claims, all rejected by the Court. . Moreover, it is well established that "the Land Court [servicemember] action [does] not mark the commencement of foreclosure proceedings." *Akar v. Federal Nat'l Mtge. Ass'n,* 845 F.Supp.2d 381, 396–97 (D.Mass. 2012). As a result, the Plaintiff's claims rest on a flawed legal premise.

Plaintiff has not paid the mortgage, interest, insurance or taxes on the Property for now over *seven* years, content to collect her rents and leave U.S. Bank holding the bag during this protracted litigation. Given the wide latitude already afforded to Plaintiff to conduct third party discovery—which the Court has already found did not support additional causes of action—the time has come to put a stop to these harassing discovery tactics that, even assuming Plaintiff has found the metaphorical lake, "**represent not merely a fishing expedition but 'an effort to dredge the lake in hopes of finding a fish.'**" *Montoya v. State Farm Lloyds*, No. 7:14-CV-182, 2015 WL 12940020, at \*6 (S.D. Tex. Jan. 27, 2015) (emphasis added); *see also U.S. ex rel Duxbury*, 719 F.3d 31 at 39 (courts may exercise their discretion and decline a party license to undertake a "fishing expedition" into purely speculative allegations where discovery has already been conducted and no piece of admissible evidence supports the claim).

## II.      ARGUMENT

The Deposition Subpoenas seek testimony that is protected from disclosure by the attorney-client privilege, implicates U.S. Bank's privacy interests, is irrelevant, and far outside the scope of discovery in this matter. "A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014). Thus, the information sought by a subpoena must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b) (1)." *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at \*4 (D. Mass. Nov. 13, 2013). Rule 45 provides that a party may (1) move to quash or modify the subpoena pursuant to Rule 45(d)(3), or (2) move for a protective order under Rule 26(c). Fed. R. Civ. P. 45(d). *See, e.g., In re New England Compounding Pharmacy,*

*Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013).

U.S. Bank has standing to quash a subpoena issued to a nonparty where the information sought implicates U.S. Bank's privacy interests. *See Cabi v. Bos. Children's Hosp.*, No. 15-CV-12306-DJC, 2017 WL 8232179, at *2 (D. Mass. June 21, 2017). "A showing of personal right or privilege 'need not be weighty,' and is met where a party can 'show *some* personal right or privilege in the information sought.'" *Id.* (quoting *Green v. Cosby*, No. 3:14-CV-30211-MGM, 2017 WL 1377593 (D. Mass. Apr. 11, 2017) (emphasis in original)). The Deposition Subpoenas were served on U.S. Bank's counsel of record, insurer, insurance agent, and a related business entity. As such, U.S. Bank has either a claim of privilege or proprietary business interest in all of the information sought by Plaintiff.

Even if this Court finds that any of the Deposition Subpoenas do not implicate U.S. Bank's privileged communications or proprietary interests, the Court may—and should—nonetheless quash the Deposition Subpoenas because they seek testimony far outside the scope of discovery. "Rule 26 contemplates that the Court may take its own steps to ensure that the discovery to be produced comes within the scope of Rule 26(b)(1), that is, that it is relevant to Plaintiff['s] claims and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii)." *Cabi* 2017 WL 8232179, at *3 (discovery denied even where party had no standing to quash).

For the reasons outlined herein, each of the Deposition Subpoenas is improper, outside the scope of discovery, and should be quashed in their entirety.

## A. The Longoria Deposition Subpoena

"Depositions of opposing counsel are generally disfavored." *Bingham v. Supervalu Inc.*, No. CV 13-11690-FDS, 2014 WL 12792917, at *6 (D. Mass. May 28, 2014). As to the Longoria Deposition Subpoena, U.S. Bank plainly has standing to move to quash because the subpoena would necessarily seek to intrude on communications protected by the attorney-client privilege. *See Cabi*, 2017 WL 8232179, at *2. Longoria is U.S. Bank's counsel of record in this litigation and in the Complaint filed under the Servicemembers Civil Relief Act, the very action Plaintiff complains of in the c. 93A count. *See* Amended Complaint. The Court has already clearly held that the filing of the Complaint to Determine Military Status is not actionable and U.S. Bank does not dispute that it was aware that William Katsenes had passed away prior to initiating that Complaint. *See* Memorandum and Order, Dkt. No. 84 (filing the Complaint to Determine Military Status is "properly part of a legal action in Land Court"). Not only is Longoria's testimony irrelevant, but it is improper to depose trial counsel as to her client's knowledge of facts. *See Palomar Med. Techs., Inc. v. Cutera, Inc.*, No. CIV.A.02-10258-RWZ, 2005 WL 419685 (D. Mass. Jan. 20, 2005) (denying motion to depose plaintiff's trial counsel concerning knowledge of an apparently relevant memorandum, rendered moot when disclosed by plaintiff, where motion was not only moot, but "invasive and inevitably treads on attorney-client privilege.").

The District of Massachusetts has described the standard for allowing the deposition of counsel as follows:

> In deciding whether the deposition of opposing counsel is appropriate, courts often use the test adopted by the Eighth Circuit in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). *See Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 210 (D.P.R. 1998). Under that test, depositions of opposing counsel should be limited to "where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information [other] than to depose opposing counsel, (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.

The First Circuit has not explicitly adopted the *Shelton* test. However, it has used a similar test in deciding whether opposing counsel may be compelled to testify at trial. *See Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003). Under that test, the factors to be considered include: "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, non-privileged and crucial to the moving party's case." *Id.* (citations omitted). While <u>Bogosian</u> dealt with trial testimony, these factors are also relevant to the depositions of trial counsel. *See In re Tyco Int'l Ltd.*, No. 02-md-1355-PB, 2007 WL 2682763, at *1 (D.N.H. Sept. 7, 2007); *Confederate Motors, Inc. v. Terny*, No. 11-10213-JGD, 2012 WL 612506, at *1 (D. Mass. Feb. 24, 2012); *Emhart Industries, Inc. v. New England Container Co., Inc.*, Nos. 06-218 S, 11-023 S, 2013 WL 6001076, at *2-3 (D.R.I. Nov. 12, 2013)

*Bingham*, 2014 WL 12792917, at *6–7. Plaintiff's efforts to depose Longoria must fail under either the *Shelton* test or the First Circuit's similar test. To the extent Plaintiff seeks to inquire about communications with U.S. Bank, those communications are indisputably protected from disclosure as privileged. *Id.*, at *4 ("Under Massachusetts law, the attorney-client privilege arises: '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'") (quoting *Comm'r of Revenues v. Comcast Corp.*, 453 Mass. 293, 303 (2009)).

To the extent Plaintiff seeks to inquire about communications with anyone aside from U.S. Bank, those communications (to the extent otherwise relevant and within the scope of discovery, which they are not) could necessarily be obtained from sources other than Longoria's deposition. Indeed, Plaintiff's counsel *has already obtained* written communications between WFG and Longoria. Moreover, any information Plaintiff seeks concerning Longoria's communications with parties other than U.S. Bank is irrelevant (and far from crucial) to Plaintiff's case. It has already been determined as a matter of law in this lawsuit that it is not

actionable for U.S. Bank, through Doonan, Graves & Longoria, to have filed the Complaint to Determine Military Status, even knowing that William Katsenes had passed away and that Plaintiff was not a signatory on the 2005 Mortgage.[4]  U.S. Bank has not denied this and testimony on the topic, particularly from counsel of record, is therefore duplicative, harassing, irrelevant, and outside the scope of discovery.

Longoria's anticipated testimony related to U.S. Bank's submission of its insurance claim to WFG under the Policy is also irrelevant.  The written communications *have already been produced* and their contents do not so much as hint at any impropriety on behalf of U.S. Bank.  It must be kept in mind that the *sole* issue of this case is whether Plaintiff must repay the *hundreds of thousands of dollars* in mortgage debt payoff, taxes, insurance (plus interest) that she has avoided at U.S. Bank's expense for *over seven years*.  Longoria's testimony on unprivileged matters will shed no light whatsoever on any facts that go to either party's claims or defenses on that issue.  Plaintiff, at best, apparently hopes that some new, material evidence will be unearthed by deposing Longoria.  The First Circuit does not allow a party "to go on a 'fishing expedition,' with the mere 'hope' that it will obtain" the information it seeks.  *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001); *see also Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 186 (1st Cir. 1989) (holding that a party may not "undertake wholly exploratory operations in the vague hope that something helpful will turn up.").  The Longoria Deposition Subpoena is wholly improper and should be quashed in its entirety.

### B.  The WFG Deposition Subpoena[5]

---

[4]     This argument is also barred by the law of the case doctrine.  Under that doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Wallace*, 573 F.3d 82, 87 (1st Cir. 2009) (citations omitted).

[5]     U.S. Bank understands that WFG may file its own Motion to Quash Plaintiff's subpoena, and, if that motion is filed, U.S. Bank incorporates the arguments made in WFG's Memorandum of Law.

It is worth repeating that Plaintiff's claims alleging a "conspiracy" between WFG and U.S. Bank have already been rejected by the Court. *See* Dkt. No. 84. U.S. Bank writes further to underscore that the WFG Deposition Subpoena is nothing more than a fishing expedition and a waste of the parties' time and resources.

WFG has already responded to a subpoena *duces tecum* directed to WFG's Keeper of Records. The WFG Deposition Subpoena now seeks *thirty-four (34)* separate categories on which WFG is expected to testify, none of which is within the scope of discovery. *See* **Ex. B**. For example, Plaintiff seeks information concerning WFG's decision whether or not to accept U.S. Bank's claim under the Policy, which has no bearing on the instant litigation whatsoever. Plaintiff has also attempted to make hay of an email from WFG to Carrington/Vylla stating "The borrower predeceased his non-borrower wife which means the bank lost all rights in the property. Under Massachusetts law, where the property is held by husband and wife as tenants by the entirety, the property passes automatically to the surviving spouse by operation of law." November 30, 2018 Correspondence, attached hereto as **Exhibit E**. Not only does this e-mail neglect to mention the doctrine of equitable subrogation, but the musings of WFG's Texas-based in-house counsel are irrelevant to the merits of this litigation and U.S. Bank's rights and claims under Massachusetts law.

Plaintiff's counsel has had various points indicated an apparent belief that U.S. Bank is not entitled to invoke the doctrine of equitable subrogation because there is a title insurance policy. The Massachusetts Court of Appeals has flatly rejected this argument. *See Bank of America, N.A. v. Diamond Financial, LLC*, 88 Mass. App. Ct. 564 (2015) (holding that the existence of a title insurance policy does not preclude the application of equitable subrogation, noting a "legal remedy in the form of money damages would not restore the plaintiff to its

rightful senior position" and "**[s]ubrogation of a mortgagee, as an equitable remedy, was always intended to prevent a person…from receiving an unearned windfall at the expense of another person**, who represents the rightful priority interest.") (emphasis added). U.S. Bank does not deny that the 2005 Mortgage is the subject of a title insurance policy. However, that does not prohibit U.S. Bank from bringing its counterclaims against Plaintiff to prevent her unjust enrichment, and testimony from WFG is harassing, unnecessary, and outside the scope of discovery for this case.

### C. The LSF9 LLC Subpoena[6]

The LSF9 LLC was the purchasing entity pursuant to the purchasing agreement whereby Bank of America Assigned the 2005 Mortgage to U.S. Bank. To extent Plaintiff seeks to establish the LSF9 LLC's knowledge of her interest in the Property prior to the time it purchased the 2005 Mortgage, the LSF9 LLC is not a party to this litigation, has never been the holder of the 2005 Mortgage, and as such this discovery is irrelevant and does not support any claims or defenses. Nonetheless, actual or constructive knowledge does not preclude application of the doctrine of equitable subrogation. In the seminal case of *East Boston Sav. Bank v. Ogan*, 428 Mass. 327 (1998), the lender apparently made a mistake in overlooking a document of record as to which it had constructive notice, but such notice did not deter the Court from applying equitable subrogation in order to prevent unjust enrichment. The Supreme Judicial Court has explicitly "decline[d] to adopt a bright line rule concerning subrogee knowledge." *Ogan* at 331. The SJC emphasized that the relevant inquiry is the equities even where "the subrogee has actual or constructive knowledge of the intervening mortgage" (or here, the intervening interest). *Id.* There is no evidence whatsoever that Bank of America (the original lender) or U.S. Bank

---

[6] Based on publicly available records, the LSF9 LLC is a Delaware LLC, and therefore likely outside the geographic scope of Rule 45(c)(1).

intentionally overlooked Plaintiff's interest in the property and so they were, at most, negligent. And "[n]egligence of one which does not induce a change of position in the other is not a bar to recovery in cases of subrogation." *Ogan*, 428 Mass. at 332, quoting *Worcester N. Sav. Inst. v. Farwell*, 292 Mass. 568, 574 (1935); *see also Bank of America, N.A.*, 88 Mass. App. Ct. 564 at 571 ("…the subrogee's negligence or lack of diligence does not bar recovery and is only a material consideration when the intervening lienholder has been prejudiced.")  There is furthermore no evidence that Plaintiff changed her position or was prejudiced in any way based on Bank of America's failure to include her on the 2005 Mortgage.  Simply, Plaintiff knows that she had signed mortgages, was not aware that her husband had taken out the 2005 Mortgage until 2016, and at the time of her June 2021 deposition *was not aware that the mortgages she had signed were discharged.  See* Excerpt of Plaintiff's Deposition Transcript, attached hereto as **Exhibit F** at 45:16-19 ("Q: Sure. The three loans that you and your husband jointly granted in 2003, 2004, and 2005, were you aware that they were discharged?  A: **No**.").  As such, there can be no prejudice to Plaintiff if the 2005 Mortgage is revived and testimony from the LSF9 LLC, a non-party to this litigation, is irrelevant, harassing, and outside the scope of Rule 26.

To the extent Plaintiff seeks to establish that the LSF9 LLC could have rescinded its purchase of the 2005 Mortgage upon discovery of Plaintiff's interest in the Property, such discovery is also irrelevant because no party to this litigation was a party to the loan purchase agreement.[7]  Plaintiff would effectively be seeking to ask this Court to withhold an equitable remedy from U.S. Bank because a *separate entity* did not avail itself of a now-expired contractual remedy allegedly available to it nearly five years ago.  There is no basis in fact or law

---

[7]     Furthermore, William Katsenes was still alive during the rescission period of the contract, and so there arguably was no basis for the LSF9 LLC to rescind the purchase of the 2005 Mortgage upon discovery of Plaintiff's interest in the Property at that time.  Even if they had, Bank of America would likely similarly be entitled to make the very same equitable subrogation claim that U.S. Bank is now making.

to entitling Plaintiff to retroactively demand specific performance of an expired contract provision under a contract that neither she nor U.S. Bank are a party to and to evade liability for the hundreds of thousands of dollars that she has been unjustly enriched by.

As such, the LSF9 Deposition Subpoena is wholly irrelevant and outside the scope of allowable discovery in this case. The facts of the matter are that the Plaintiff's debt was paid with the Defendant's loan, which was erroneously granted, and that Plaintiff would be unjustly enriched by reaping a windfall if she is permitted to own the Property free of any mortgage.

### D. The Vylla/Carrington Deposition Subpoena

U.S. Bank has standing to quash the Carrington Deposition Subpoena because it purports to probe into irrelevant and private business matters between U.S. Bank, its insurer, and its attorneys. Again, Carrington's *only* relationship to this litigation is that it was the agent that issued the title insurance policy that insures the 2005 Mortgage. Nonetheless, Plaintiff has noticed incredibly broad topics blatantly outside the scope of discovery for this matter. For example, just *one* of the noticed topics encompass "All communications concerning the WFG Title Policy by and between Carrington and/or (i) WFG Title; and/or (ii) anyone from the law firm of Robinson & Cole, including but not limited to Attorney Lawrence P. Heffernan and/or Attorney Julianna M. Charpentier [the undersigned co-counsel for U.S. Bank]; and or (iii) anyone from the law firm of Doonan, Graves & Longoria, including but not limited to Attorney Reneau J. Longoria [also co-counsel for U.S. Bank] and/or Attorney Elizabeth Dailey [former counsel to U.S. Bank]; and/or (iv) U.S. bank and/or (v) Caliber; and/or (vi) LSF9 Holding Company and/or (vii) Bank of America and/or (viii) anyone from the law firm of Johnson & Borenstein, including but not limited to Attorney Mark B. Johnson, and/or (ix) anyone from the law firm of Day Pitney, including but not limited to Attorney Erick M. Sandler and/or Attorney

Melissa Bruynell Manesse." *See* **Ex. D**, Topic 2. Some noticed topics are not even limited to the 2005 Mortgage, the Policy, or the facts of this case in any way, shape, or form (e.g. Request No. 15: "All communications with Jesse Cortese" Mr. Cortese is an employee of WFG).

As previously stated, the existence or nonexistence of title insurance is wholly irrelevant to the parties rights and remedies in the instant litigation. *See Bank of America, N.A.*, 88 Mass. App. Ct. 564. U.S. Bank does not dispute that the 2005 Mortgage is the subject of the Policy, a copy of which has already been produced in this litigation multiple times in response to a subpoena *duces tecum* Plaintiff served on WFG, *and* on August 27, 2020 by Carrington in response to a subpoena *duces tecum* issued by Plaintiff's counsel. In addition to producing the Policy, Carrington also produced a rundown of the Property's title history, a legal description of the Property, the Town of Dover's 2016 Property Values, and various documents concerning the Property that appear to be recorded in the Norfolk County Registry of Deeds. Nothing produced by Carrington necessitates the deposition testimony Plaintiff now seeks.

Plaintiff also noticed the following topic: "The circumstances concerning the document entitled 'Borrower's Limited Title Agreement' referred to on line 15 of the partially redacted document produced by U.S. Bank as USB 01136, and the Forms Numbered ending in 9050 and 9051, also referred to in said partially redacted document produced by U.S. Bank as USB 01136, including the whereabouts of the original document, the contents thereof, the purpose, and the function of the document and the understanding of U.S. Bank of the effect of said document on the loan and/or mortgage…" **Ex. D**, Topic 32.[8] First, the "Borrower's Limited Title Agreement" and forms 9500 and 9051 were referenced on a document provided by U.S. Bank as part of *Bank of America's* closing file for the 2005 Mortgage. The referenced documents

---

[8] This topic was also included on the WFG (**Ex. B**, Topic 32) and LSF9 LLC (**Ex. C**, Topic 30) Deposition Subpoenas and is similarly improper and outside the scope of discovery as it relates to those entities.

themselves have never been in U.S. Bank's possession and Plaintiff has not pursued enforcement

the subpoena she issued to Bank of America. Carrington did not produce these documents,

indicating it similarly does not have them in its possession, custody, or control. To demand

testimony on a document Carrington does not have and which the parties have not seen because

Plaintiff hasn't enforced her subpoena to Bank of America is harassing and a waste of time.

Plaintiff has consistently and erroneously maintained that the Borrower's Limited Title

Agreement is evidence that Bank of America knowingly issued the 2005 Mortgage knowing full

well that Plaintiff had an interest in the Property and was not a signatory. This is flatly mistaken.

Although U.S. Bank does not have the document executed in connection with the 2005 Mortgage

granted to Bank of America, case law reveals the nature of this document and prove that it is not

the smoking gun Plaintiff thinks it is, but rather yet another red herring.

The Borrower's Limited Title Agreement simply gives the lender the legal ability to

correct minor errors or oversights, or to insert the legal description of a property following the

execution of a mortgage. *See, e.g.*, *Gilchrist v. Wells Fargo Bank*, No. 4:12-CV-118-D, 2014 WL

4105071, at *1 (E.D.N.C. Aug. 19, 2014) ("At the closing, the Gilchrists signed a Borrower's

Limited Title Agreement, in which **they acknowledged that the bank would add the legal**

**description for the property securing the Note and the Deed of Trust at a later date**");

*Inglett v. Volkswagen Bank USA*, No. A08-1970, 2009 WL 1587258 (Minn. Ct. App. June 9,

2009) ("On the same date that Craig Inglett signed the mortgage, both he and Anna Inglett

signed a 'Borrowers Limited Title Agreement,' **agreeing to comply with any request by bank**

**to correct any errors or oversights in documents concerning the loan and mortgage**.");

Appellant's Brief in *Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A.,*

*Plaintiff-Appellant, v. Edna S. Coleman a/k/a Edna Coleman, et al., Defendants-Appellees*, 2014

WL 3900846 (N.C.App.) (Additionally, Appellees executed a "Borrower's Limited Title Agreement" in connection with the Deed of Trust that stated: 'Schedule A' will provide the legal description for the physical property address noted on the face page of the ... Deed of Trust ...**Property owners agree that Lender or its agent may supplement that description or make other corrections, modifications, or supplements to the Security Instrument that Lender or its agent reasonably believes are necessary or appropriate to obtain recordation of the Security Instrument**…"). Simply, the document is not what Plaintiff thinks it is, and inquiry on this topic, particularly where she has neglected to enforce a subpoena on the only entity that may have the documents she seeks, is harassing.

Plaintiff is also transparently fishing for documents showing that (1) U.S. Bank and/or WFG and/or Carrington were aware of Plaintiff's interest in the Property at the time U.S. Bank acquired the loan in 2016.[9] Plaintiff does not allege that she independently notified anyone, much less U.S. Bank, WFG or Carrington, that she had an interest in the Property. Instead, her arguments rely on the existence of her interest reflected by the public records. Because the public records speak for themselves, Carrington's testimony on this topic would be duplicative, harassing, unnecessary and improperly seeking an unnecessary expert opinion. To be clear, third-party testimony is not needed to establish the contents of the public records or to construe a deed. Again, U.S. Bank notes that the crucial inquiry in equitable subrogation claims is *Plaintiff's unjust enrichment. See, e.g.*, *Wells Fargo Bank, N.A. v. Comeau,* 92 Mass. App. Ct. 462, 468 (2019) ("Ultimately, *the purpose of equitable subrogation is to prevent unjust enrichment*.") (emphasis added). WFG and/or Carrington's knowledge of Plaintiff's interest in the Property is

---

[9]     U.S. Bank again notes that it acquired the loan prior to William Katsenes' death, when he still had an interest in the Property.

wholly irrelevant as they are neither the holders of the 2005 Mortgage nor parties to this litigation.

Plaintiff is also apparently digging for information from Carrington concerning U.S. Bank's claim under the Policy. It is undisputed that (1) the 2005 Mortgage is insured, (2) U.S. Bank made a claim under the Policy, (3) WFG retained the undersigned counsel to represent U.S. Bank in this litigation pursuant to the terms of the Policy. In addition to being undisputed, those facts are also irrelevant. Plaintiff plainly takes issue with the fact that WFG has chosen to defend its insured and assert viable counterclaims, rather than simply pay out the Policy and leave Plaintiff to reap the *hundreds of thousands of dollars* of benefits received over *seven years* of nonpayment of mortgage, interest, taxes, or insurance.

Plaintiff's failed claim for civil conspiracy rested on the very same fundamental misunderstanding that a Defendant with insurance is barred from seeking equitable relief, even if doing so would offset the ultimate liability of its insurer. Dkt. No. 84 (Plaintiff "has not plausibly alleged an unlawful purpose or a lawful purpose by unlawful means where the nature of the alleged conspiracy is WFG's defense of its insured, U.S. Bank, in litigation brought by Katsenes, and where U.S. Bank has asserted a counterclaim of equitable subrogation."). Despite the Court having already rejected this position, Plaintiff appears to maintain that even if the Defendant is unsuccessful on its counterclaim, it has insurance, and therefore bringing the counterclaim amounts to an unfair and deceptive trade practice on U.S. Bank's part. Whether WFG has issued a payment on the claim or not (it has not) has no bearing whatsoever on *this* litigation because *the existence of title insurance is not a bar to equitable subrogation in the Commonwealth of Massachusetts. See Bank of America, N.A.*, 88 Mass. App. Ct. 564. WFG's payment or nonpayment of any claim is only relevant between the parties to the title insurance

policy–the insured and the insurer–and has no bearing on any claim or defense of this litigation. Plaintiff has no standing whatsoever to demand specific enforcement or to challenge contractual provisions of the Policy and testimony from Carrington on the Policy will do nothing to affect the parties claims or defenses in this litigation.

The Carrington Deposition Subpoena also includes the topic: "All circumstances and communications concerning any claim by or against Carrington upon its errors and omissions insurance or any source of indemnification for any claim made against Carrington for errors, omissions, negligence, and/or malpractice." Again, Plaintiff's theory is obvious, i.e. that Carrington made a mistake in issuing the Policy to insure the 2005 Mortgage despite Plaintiff's interest in the Property. Carrington and Plaintiff have no relationship, contractual or otherwise. Even *if* Carrington made a mistake in issuing the Policy, that dispute would be between WFG and Carrington, *neither of whom are parties to this litigation*. Furthermore, equitable subrogation is a doctrine designed to prevent the unjust enrichment of people, like Plaintiff, because of the mistakes of others. *See Comeau*, 92 Mass. App. Ct. at 465 (Explaining the SJC's holding in *Ogan*, noting that "[a]lthough East Boston made a mistake in overlooking a mortgage as to which it had constructive notice, equity demanded subrogation in order to prevent Ogan, the undischarged mortgagee, from becoming unjustly enriched with a higher priority position.").

The Carrington Deposition Subpoena, like the others, seeks testimony on topics that are immaterial to this litigation and outside the scope of discovery and should be quashed in its entirety.

### E. This Court has broad latitude to fashion a protective order and should do so here.

The Court has broad discretion, upon a showing of "good cause" to issue a protective order preventing "annoyance, embarrassment, oppression, or undue burden or expense,"

including "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1). As previously stated, even if this Court finds that any of the Deposition Subpoenas do not implicate U.S. Bank's privileged communications or proprietary interests, the Court should nonetheless quash the Deposition Subpoenas because they seek testimony far outside the scope of permissible discovery and wholly disproportionate to the needs of this case. "Rule 26 contemplates that the Court may take its own steps to ensure that the discovery to be produced comes within the scope of Rule 26(b)(1), that is, that it is relevant to Plaintiff['s] claims and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii))." *Cabi* 2017 WL 8232179, at *3.

For the reasons explained above, the Deposition Subpoenas are irrelevant, harassing, outside the scope of discovery, and the testimony sought will have no impact on the parties' claims or defenses. U.S. Bank therefore respectfully requests that the Court quash the Deposition Subpoenas in their entirety pursuant to Fed. R. Civ. P. 45 and/or issue a protective order preventing Plaintiff from taking the noticed depositions pursuant to Fed. R. Civ. P. 26.

## III.   CONCLUSION

For the reasons set out herein, U.S. Bank respectfully requests that this Court grant its Motion to Quash Deposition Subpoenas and/or Issue Protective Order.

Respectfully submitted,

**U.S. BANK TRUST, N.A. AS TRUSTEE
FOR LSF9 MASTER PARTICIPATION
TRUST,**

**DEFENDANT/COUNTERCLAIM PLAINTIFF,**

By its attorneys,

*/s/ Julianna M. Charpentier*
Lawrence P. Heffernan (BBO #228660)
Julianna M. Charpentier (BBO #703286)
ROBINSON & COLE LLP
One Boston Place
Boston, MA  02108
(617) 557-5900
Lheffernan@rc.com
jcharpentier@rc.com

Reneau J. Longoria (BBO #635118)
Doonan, Graves & Longoria, LLC
Suite 303C
100 Cummings Center
Beverly, MA 01915
(978) 921-2670
rjl@dgandl.com

Dated: January 21, 2022

<u>**CERTIFICATE OF SERVICE**</u>

I, Julianna M. Charpentier, certify that this document filed through the ECF system will

be sent to the registered participants as identified on the Notice of Electronic Filing (NEF) and

paper copies will be sent to those indicated as non-registered participants on January 21, 2022.

*/s/ Julianna M. Charpentier*
Julianna M. Charpentier