# EXHIBIT 2

1

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2

3

4    CHRISTA KATSENES,                    )
                                          )
5    Plaintiff and                        )
     Defendant in Counterclaim,           )
6                                         )
                                          )    Civil Action
     v.                                   )    No. 1:19-CV-12112-DJC
7                                         )
                                          )
     U.S. BANK TRUST N.A.,                )
8                                         )
                                          )
     Defendant and                        )
9    Plaintiff in Counterclaim.           )
                                          )
10

11

12              BEFORE THE HONORABLE MARIANNE B. BOWLER
                    UNITED STATES MAGISTRATE JUDGE
13

14                          MOTION HEARING
                            VIA TELEPHONE
15

16                        September 21, 2020
                            12:02 p.m.
17

18          John J. Moakley United States Courthouse
                      One Courthouse Way
19              Boston, Massachusetts 02210

20

21

22                  Linda Walsh, RPR, CRR
                      Official Court Reporter
23       John J. Moakley United States Courthouse
                 One Courthouse Way, Room 5205
24               Boston, Massachusetts 02210
                    lwalshsteno@gmail.com
25

2

```
 1   APPEARANCES:

 2   On Behalf of the Plaintiff and Defendant in Counterclaim:

 3         GILMAN, MCLAUGHLIN & HANRAHAN, LLP
           By: Robert E. McLaughlin, Sr., Esq.
 4         101 Merrimac Street
           Boston, Massachusetts 02114
 5         617-227-9999
           remsr@gilmac.com
 6
           Sylvia Katsenes, Esq.
 7         743 Washington Street
           Newtonville, Massachusetts 02160
 8         617-244-2137

 9   On Behalf of the Defendant and Plaintiff in Counterclaim:

10         ROBINSON & COLE, LLP
           By: Julianna M. Charpentier, Esq.
11         One Boston Place
           Boston, Massachusetts 02108
12         617-557-5930
           jcharpentier@rc.com
13

14

15

16               Proceedings reported and produced
                   by computer-aided stenography.
17

18

19

20

21

22

23

24

25
```

3

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  United States District Court for the
 3    District of Massachusetts is now in session, the Honorable
 4    Marianne B. Bowler presiding.  Today is September the 21st,
 5    2020, in the matter of Katsenes versus U.S. Bank Trust N.A.,
 6    Civil 19-12112, which will now be heard.
 7          As a reminder to everyone on the call, any recording
 8    or rebroadcasting of the court proceeding is prohibited, and
 9    doing so may result in sanctions as deemed appropriate or
10    necessary by the Court.
11          So with that having been said, will counsel please
12    identify themselves for the record, beginning with the
13    plaintiff.
14          MR. McLAUGHLIN:  Good afternoon again.  This is
15    Attorney Robert McLaughlin, Sr.  I represent Christa Katsenes,
16    who is not only plaintiff but also defendant in counterclaim.
17          On the phone with me is Sylvia Katsenes, who is not a
18    member of the Federal Bar but a member of the Mass. Bar.  And,
19    Your Honor, I may say, she's taken your advice and she is now
20    an applicant for the Federal Bar.
21          THE COURT:  I'm glad to hear it.
22          MS. SYLVIA KATSENES:  Good afternoon, Your Honor.
23    Sylvia Katsenes here.
24          THE COURT:  Thank you.
25          MS. CHARPENTIER:  Good afternoon, Your Honor.
```

4

1    Julianna Charpentier on behalf of U.S. Bank Trust N.A.

2    THE COURT:  Thank you very much.

3    Well, it's your motion, Docket Entry Number 52, motion

4    to modify the subpoenas.  So let me hear you.

5    MS. CHARPENTIER:  Thank you, Your Honor.

6    So three subpoenas have been issued, one to U.S. Bank,

7    one to Vylla Title, and one to the law firm Doonan, Graves &

8    Longoria.  There are a number of requests in those subpoenas

9    which are simply outside the scope of discovery.  Irrespective

10   of the fact that a protective order has been issued in this

11   case, the protective order does not entitle a party to seek

12   documents outside the scope of discovery.

13   So there are certain specific -- so I should --

14   THE COURT:  Well, let's go through them one by one.

15   I'll hear your argument and then I'll hear Mr. McLaughlin's.

16   MS. CHARPENTIER:  Okay.  Thank you, Your Honor.

17   I should say that some production has been made by

18   each of those three recipients of the subpoenas already.

19   Largely, any documents that have already been produced which we

20   had objected to, we objected to on grounds of relevance.  So we

21   have -- to the extent those documents were already produced, I

22   mean, they neither help nor harm either party, in our view,

23   because they were simply irrelevant and therefore outside the

24   scope of discovery.  But to the extent they have been produced,

25   we're not going to challenge that.

5

1    We'll start with Bank of America.  So the number
2  of -- there was an issue with the wording, specifically for
3  Topic 1.  We have no problem with the way -- with the specific
4  documents requested, but it does include language "but is not
5  limited to."  And that, I believe, takes it outside the scope
6  of discovery, and it's impermissibly broad because it would
7  call -- this mortgage was purchased -- the mortgage at issue
8  was purchased with a number of loans.  To the extent any of
9  those -- any information as to the other loans would fall into
10 that "but is not limited to," we object to that.
11            THE COURT:  Mr. McLaughlin?
12            MR. McLAUGHLIN:  I'm absolutely not interested in any
13 loan except the loan in question to William Katsenes, as a
14 matter of fact what's been produced.  I believe everything else
15 has already been redacted with regard to the other loans.
16            THE COURT:  All right.  So one is not an issue?
17            MR. McLAUGHLIN:  One is an issue, Your Honor, if I may
18 be heard.  You have already ruled when this document -- the
19 basic assignment document was withheld completely.  You've
20 already ruled that they need to produce it.  They did produce
21 it.  We have no problem with them redacting the names of other
22 loans, but they did redact a series of loan provisions of the
23 document which relate primarily to the warranties that were
24 made and some limitations on the warranties.  And if I may say,
25 Your Honor, except for the names of other people, the key

1 | document that gives them the authority to have standing in this
2 | case -- because the mortgage and the note is not made out to
3 | Bank U.S.  It's made out to Bank of America.  That is the
4 | assignment document.  That is the fundamental document that
5 | gives them the standing and is -- I think we absolutely are
6 | entitled to see the whole document with the exception of any
7 | private information of anything else.
8 |        I will get to my argument later as to why the
9 | warranties are so important to us.  Well, I mean, basically I
10 | can succinctly say right now, there is a warranty that there is
11 | good clear title for the basis of foreclosure.  And they have
12 | an absolute right -- the defendant bank in this case has an
13 | absolute right to rescind that transaction and go back against
14 | the bank and suffer no damage at all.
15 |        This is an equity proceeding in which we balance the
16 | interests of the parties and the benefit and the detriment to
17 | each.  So it's absolutely a key document we need to see in its
18 | entirety.
19 |        THE COURT:  All right.  The warranties go to damages,
20 | and therefore are relevant and therefore should be produced.
21 |        MS. CHARPENTIER:  Your Honor, if I just might be
22 | heard.  The plaintiff is not a party to the agreement between
23 | Bank of America and U.S. Bank.  To the extent there is any
24 | warranty, as the plaintiff counsel stated, the plaintiff would
25 | have no standing to enforce -- would have no standing -- is not

7

1   a beneficiary of the agreement between U.S. Bank and Bank of
2   America.  And -- sorry, Your Honor.  I'll stop there.
3           THE COURT:  No, my ruling stands.
4           MS. CHARPENTIER:  Okay.
5           THE COURT:  Next?
6           MS. CHARPENTIER:  So next I believe would be the
7   subpoena to the law firm Doonan, Graves & Longoria.  They have
8   responded to that subpoena.  They have not produced the
9   information which we were concerned about.  So I guess my
10  concern is only if plaintiff's counsel intends to pursue any
11  information which would -- any topic that would call for
12  privileged information.
13          THE COURT:  Can we work around that, Mr. McLaughlin?
14          MR. McLAUGHLIN:  Yes, of course we can.
15          First of all, it's not up to the bank to assert the
16  privilege.  And of the documents they've produced so far, the
17  law firm has not asserted any privilege on behalf of their own
18  client, which is the defendant bank in this case.
19          The documents I'm looking for is their relationship
20  with the Bank of America, as the brief that I filed indicates.
21  We have found out so far in discovery that there was a title
22  insurance policy that guarantees clear record title for the
23  property in question.  In fact, the Doonan firm, which we found
24  out so far, made a demand under that policy.  And there's
25  correspondence back and forth, and the title insurance company

8

1  is saying, well, this is supposed to be a replacement policy

2  and so -- then it fades away.  And what it appears and very

3  well may have happened is, they may have paid the claim.  In

4  any event, what we know because the new counsel that has come

5  in, the firm presently representing the defendant bank, is the

6  counsel for the title insurance company.  So what we're facing

7  here is who's the real party in interest.

8           And I humbly suggest, and I'll get to this later in my

9  argument, this is equity where you balance the totality of the

10 circumstances between the two parties to do the fair and right

11 thing.  And it looks -- the warrantable inference is the real

12 party here now is the title insurance company, and they are

13 masquerading behind an alleged innocent party that's lost

14 $500,000 when in fact it is they who were paid, and paid

15 handsomely, to take this risk and somehow or other made a

16 mistake and issued a policy when it was possible that William

17 died first and the loan would be extinguished, and of course

18 that's what happened.

19          Secondly on this -- on this issue, a very strange

20 event.  The policy -- the title insurance policy was not issued

21 in 2005 when the loan was taken out.  The first time I've ever

22 seen this in the practice of law.  It was issued in 2016, and

23 2016 is the time that the Bank U.S. bought the mortgage from

24 Bank of America.  And the only inference that I can have -- and

25 to get a policy at that time and make it retroactive back to

1   the original date is they knew this mortgage was -- the

2   mortgage was bad or capable of becoming bad if William died

3   first.

4              If that is so, the law of subrogation is crystal

5   clear.  If you are a volunteer -- and that would make them a

6   volunteer, buying paper that they know was subject to being

7   extinguished upon the death of William first.  They are a

8   volunteer.  The law is crystal clear that bars them from any

9   subrogation theory.  The law is clear that if someone puts

10  their skin in the game and takes the risk and it turns out that

11  they're a loser, they can't look to another person to claim

12  equity to make them whole.  The whole of these title insurance

13  documents, and what happened and who's the party, is

14  fundamental to the defense of this case, which is an equitable

15  case.

16              Thank you, Your Honor.

17              THE COURT:  You're welcome.

18              Ms. Charpentier?

19              MS. CHARPENTIER:  Your Honor, we didn't object to the

20  topics related to the rendering of title insurance and issuance

21  of the title insurance policy.  We object to the further

22  documents sought, which are intruding on the relationship

23  between the insurer and the insured.  Title insurance does not

24  exist to just cut a check in the event -- in the event of a

25  title defect.  It exists to remedy the title defect, and the

1   methods by which it does so -- again, the plaintiff has no

2   standing to dictate how the title insurance and their insured

3   operate.

4           MR. McLAUGHLIN:  Your Honor, if I could respond to

5   that?

6           MS. CHARPENTIER:  So it's not a defense of equitable

7   subrogation.  Sorry.  Go ahead.

8           MR. McLAUGHLIN:  If I could respond to that?

9           There is no issue in this case.  Title cannot be

10  remedied.  Title, if anything, is absolutely clear.  When

11  William died, the mortgage was extinguished.  They are seeking

12  in equity to put themselves in the shoes of mortgages that were

13  pre-existing in which Christa was liable and so forth.

14          So that it's not a matter of determining title.  It's

15  a matter of trying to find somebody else to pay the claim that

16  they should be paying, and that's very relevant in the equity

17  of this situation in balancing the interest.

18          THE COURT:  Well, it seems clear to me that the title

19  insurance policy is subject to production.

20          MS. CHARPENTIER:  That has been produced, Your Honor.

21          THE COURT:  I mean, first, the automatic disclosure

22  provisions of Federal Rule of Civil Procedure 26(a)(1)(A)(iv)

23  require, and I quote, "For inspection and copying as under Rule

24  34 any insurance agreement under which an insurance business

25  may be liable to satisfy all or part of a possible judgment in

1  the action or to indemnify or reimburse for payments made to
2  satisfy the judgment."

3        So, I mean, it seems clear to me it's discoverable,
4  but it should be discovered, I would think, from the title
5  agent.

6        MS. CHARPENTIER:  Your Honor, the title insurance
7  policy has been produced.

8        MR. McLAUGHLIN:  Do you want me to catch you up?
9        MS. CHARPENTIER:  We're objecting to the --
10       THE COURT:  I must ask you to please speak one at a
11  time for the benefit of the court reporter.  It's not easy
12  doing this over the telephone.

13       MR. McLAUGHLIN:  This is Attorney Robert McLaughlin.
14  The policy has been produced.  It was produced, I believe, in
15  the initial disclosure, if not on the prior disclosure of the
16  request for production of documents.  There's no issue about
17  the policy of what it says, and on the four corners of the
18  policy issued there is a good clear title in this.

19       The issue here is who is the real party in interest
20  and were they a volunteer and was the policy produced because
21  they knew they -- they had a bad mortgage, and so we need more
22  than the policy.  I need the correspondence that went on
23  between the lawyers for the defendants and Bank of America to
24  find out in the totality what's happening.

25       As I see this, if there's any legs to the argument

12

1    that the defendant bank is making, let's get the documents out
2    and then we'll have motions in limine before the trial.  But
3    how do we have motions in limine when we don't know what the
4    totality of the documents in the relationship with the title
5    insurance policy is.

6              THE COURT:  Well, I think any documents relating to
7    payment under the policy are relevant and should be produced.

8              MR. McLAUGHLIN:  Yeah, I assume there's correspondence
9    back and forth whether -- there is correspondence I've seen so
10   far, and then it just fades away.  And then suddenly there's a
11   change in counsel, and in comes the counsel for the title
12   insurance company.  Now they're the real party in interest.
13   That's a fundamental fact and a fundamental defense that -- in
14   balancing equities.  The title insurance company shouldn't be
15   able to push this off on the surviving 79-year-old widow.

16             THE COURT:  Well, any correspondence and -- any
17   correspondence that relates to claims or relates to payment
18   should be produced.

19             MS. CHARPENTIER:  Your Honor, much of that has already
20   been produced.  We object to the notion that the plaintiff has
21   not been unjustly enriched here and that the title insurance or
22   the defendant should bear that.  So that is the crux of
23   equitable subrogation is the unjust enrichment of the
24   plaintiff, that her debt is being paid off.

25             Again, we object to the characterization also that the

13

1 existence of title insurance means there are damages.  The

2 title insured is entitled to, as counsel has indicated, pay for

3 my services to remedy the title defect by pursuing a claim in

4 equity.  There's no prohibition in Massachusetts on a party

5 with insurance pursuing a claim in equity.  So there's --

6    THE COURT:  Well, that's an issue for down the road,

7 but -- to be produced.

8    All right.  Next?

9    MS. CHARPENTIER:  Let me back up, Your Honor.  I

10 believe we kind of muddled between the law firm and the title

11 insured's subpoenas.

12    MR. McLAUGHLIN:  I think we did.  As I understand, it

13 is the action with agent that both the policy and everything

14 we've been saying back and forth I think on the prior title

15 insurance policy was covered in that.

16    But to make sure we have all of the documents, whoever

17 wrote the policy and whoever made a mistake on title or knew

18 what they were doing -- it may well be -- this is a line of

19 credit.  It may well be that the Bank of America knew exactly

20 they were only getting a husband's interest in this tenancy by

21 the entirety, which is a very good mortgage on his interest if

22 he survives.  So that we're entitled to know if they took that

23 risk and knowingly took that risk.  Also it's part of what

24 should be considered by a court in equity in seeing whether

25 they can now go after the widow.

14

```
 1              THE COURT:  I agree.  To be produced.
 2              MS. CHARPENTIER:  Okay.  So I think that brings us to
 3    the end of it.  The crux of our objections were the relevance
 4    issues, which have basically already been included in the
 5    production and then what Your Honor has already ruled on in
 6    terms of the warranty and title insurance.
 7              THE COURT:  All right.  Anything else?
 8              I see that you have a motion to extend discovery time,
 9    but I think that is for Judge Casper.  It has not been
10    referred.
11              MS. CHARPENTIER:  I believe so, Your Honor.
12              THE COURT:  All right.
13              MR. McLAUGHLIN:  Just a concern I have, that's the end
14    of November.  I have got to now get these documents.  And I
15    hope we don't have any more discovery fights.  I don't like
16    discovery fights.  I'm sure Your Honor doesn't like discovery
17    fights.
18              THE COURT:  Well, neither do I, Mr. McLaughlin.
19              MS. CHARPENTIER:  And, Your Honor, I would just like
20    to note that we will be producing pursuant to the protective
21    order in this case.
22              THE COURT:  Yes.
23              MR. McLAUGHLIN:  Oh, absolutely.  There's no problem
24    under the protective order.
25              THE COURT:  Can you give us some idea of the time
```

15

1   line?

2           MS. CHARPENTIER:  So I will have to get our redacted

3   version from my client.  Would two weeks work?

4           THE COURT:  Is that okay, Mr. McLaughlin?

5           MR. McLAUGHLIN:  That's fine.

6           THE COURT:  All right.  All right.  In the interim,

7   please stay safe and stay well.

8           MR. McLAUGHLIN:  And the same to Your Honor.

9           MS. CHARPENTIER:  Thank you, Your Honor.

10           MS. SYLVIA KATSENES:  Thank you.

11           THE COURT:  We stand in recess.

12           (Adjourned at 12:19 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

16

1    CERTIFICATE OF OFFICIAL REPORTER

2

3           I, Linda Walsh, Registered Professional Reporter

4    and Certified Realtime Reporter, in and for the United States

5    District Court for the District of Massachusetts, do hereby

6    certify that the foregoing transcript is a true and correct

7    transcript of the stenographically reported proceedings held in

8    the above-entitled matter, to the best of my skill and ability.

9           Dated this 29th day of September, 2020.

10

11

12           /s/ Linda Walsh

13           Linda Walsh, RPR, CRR

14           Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25